**In re PARACELSUS CORP. SE-CURITIES LITIGATION.**

No. H–96–3464.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 2, 1998.

Roger Farrell Claxton, Kilgore & Kilgore, Dallas, TX, Michael J. Pucillo, Burt & Pucillo, West Palm Beach, FL, Terrell Wallace Oxford, Susman Godfrey, Dallas, TX, Jonathan K. Levine, Frederic S. Fox, Kaplan Kilsheimer and Fox, New York City, Daniel L. Berger, Bernstein Litowitz Berger and Grossman, New York City, Katherine M. Ginzburg, Susman Godfrey, Houston, TX, Kevin J. Yourman, Los Angeles, CA, Mark S. Levine, Weiss & Yourman, Los Angeles, CA, Michael Braun, Stull Stull et al., Los Angeles, CA, for Hayley W. Werner, Alan Gordich, Gary Matzner, J.A. Ziskind.

David E. Sharp, Roger B. Greenberg, Daniel L. Berger, Greenberg Peden Siegmyer & Oshman, Houston, TX, for Barry Garber.

Roger B. Greenberg, Greenberg Peden Siegmyer & Oshman, Houston, TX, Daniel L. Berger, Bernstein Litowitz Berger and Grossman, New York City, for James Kramer, Joseph Lipsky.

John R. Knight, Houston, TX, for Lawrence Rice, Jaclyn Alexander Knight.

Kenneth G. Gilman, David Pastor, Peter A. Lagorio, Gilman and Pastor, Boston, MA, Larry Richard Veselka, Smyser Kaplan & Veselka, Houston, TX, Daniel L. Berger, Bernstein Litowitz Berger and Grossman, New York City, Daniel C. Girard, Robert A. Jigarjian, Girard and Green, San Francisco, CA, for James G. Caven.

Richard P. Keeton, Abby Meislmen, Mayor Day Caldwell & Keeton, Houston, TX, Andrew B. Weisman, Arthur F. Mathes, Wilmer Cutler and Pickering, Washington, DC, for Paracelsus Health.

Robert Roy Burford, Jean C. Frizzell, Gibbs & Bruns, Houston, TX, for Manfred George Krukemeyer, Scott Barton, Michael Hoffman, Christian Lange.

Kim Bernard Battaglini, Akin Gump Strauss Hauer and Feld, Houston, TX, Joseph Paul Esposito, Sanford M. Saunders, Jr., Akin Gump Strauss Hauer and Feld, Washington, DC, Steven M. Pesner, Robert H. Pees, Akin Gump Strauss Hauer and Feld, New York City, for R.J. Messenger.

Richard H. Borow, Kenneth R. Heitz, Marc A. Fenster, Irell and Manella, Los Angeles, CA, for James T. Rush.

Gerard G. Pecht, Fulbright and Jaworski, Houston, TX, for Bear Stearns & Co., Inc., Smith Barney, Inc., Chicago Corp., Park Hosp. GMBH, Donaldson, Lufkin & Jenrette, Inc.

Robert Ross Harrison, Houston, TX, for Patricia Greenberg, movant.

Edward Huddleston, Robert F. Watson, Law Snakard and Gambill, Fort Worth, TX, for Donald R. Patterson, movant, Charles Miller, James G. Vandevender.

Stanley Parzen, Mayer Brown & Platt, Chicago, IL, for Ernst & Young.

## MEMORANDUM AND ORDER

WERLEIN, District Judge.

Pending is a Motion to Dismiss Defendant Paracelsus Healthcare Corporation

(Document No. 166). After having reviewed the motion, the response, the reply, and the applicable law, the Court concludes that the Motion to Dismiss Defendant Paracelsus Healthcare Corporation should be GRANTED, but with leave for Plaintiffs to file a more definite statement on Count IV.

## I. *Background*

Plaintiffs are a class of individuals who purchased securities in Defendant Paracelsus Healthcare Corporation when the company made an initial public offering (IPO) pursuant to a merger with Champion Healthcare Corporation. Plaintiffs allege that both Paracelsus and its officers and directors made false and misleading statements in the registration statements which were issued in connection with the merger and stock offering. In Count IV of their Second Amended Consolidated Class Action Complaint ("Complaint"), Plaintiffs allege that Paracelsus made fraudulent misrepresentations in connection with the IPO under § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934. Paracelsus seeks to have the § 10(b) claim dismissed, asserting that Plaintiffs have failed to plead with the specificity required by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Fed.R.Civ.P. 9(b).

Much of the background for this case was set out in rulings on Defendants' earlier motions to dismiss Plaintiffs' claims under §§ 11, 12, and 15 of the Securities Act of 1933. *See In re Paracelsus Corp.*, 6 F.Supp.2d 626 (S.D.Tex.1998). In connection with a merger between Paracelsus and Champion Healthcare Corporation in August 1996, Paracelsus exchanged newly issued stock for Champion stock. About two months later Paracelsus issued a press release stating that it might need to restate some of its past financial reports. Within two days after the announcement, the company's stock price had declined 47 percent from the initial public offering price. On April 15, 1997, Paracelsus restated its financial reports for the period from January 1, 1994, through March 30, 1996. The initially reported financial statements overstated Paracelsus's revenue, income, and earnings in contravention of generally accepted accounting principles.

Plaintiffs initially asserted claims against Paracelsus and five of the company's directors and officers for violations of §§ 11, 12, and 15 of the Securities Act because of alleged false representations in the registration statements issued in connection with the merger and public offering. Subsequently, Plaintiffs amended their complaint to assert a fraud claim under § 10(b) and Rule 10b–5 of the Exchange Act against Paracelsus but not against the individual directors and officers. Paracelsus's instant motion is to dismiss the § 10(b) claim.

## II. Discussion

### A. *Standard for Fed.R.Civ.P. 12(b)(6) Dismissal*

Fed.R.Civ.P. 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *Id.*

In considering a motion to dismiss under Rule 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint. *La Porte Constr. Co. v. Bayshore Nat'l Bank of La Porte, Tex.*, 805 F.2d 1254, 1255 (5th Cir.1986); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). *cert. denied* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir.1977). Dismissal of a claim is improper unless it

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Kaiser Aluminum,* 677 F.2d at 1050; *Mann,* 556 F.2d at 293.

B. *Pleading Fraud under § 10(b) of the Exchange Act and the Private Securities Litigation Reform Act of 1995*

■ To state a claim for fraud under § 10(b) of the Exchange Act, a plaintiff must allege: "1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury." *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997). In a claim for fraud, all averments about the circumstances constituting fraud must be stated with particularity. See FED. R. CIV. P. 9(b). In securities cases, this requires that the plaintiff "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams,* 112 F.3d at 177, *citing Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993).

■ The critical issue raised by this motion is whether Plaintiffs have pled scienter with sufficient particularity. Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). For liability to arise under § 10(b), scienter requires that the defendant acted with knowledge or severe recklessness. *See Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1018 n. 2 (5th Cir.1996). A defendant makes severely reckless misrepresentations when the statements are "an extreme departure from the standards of ordinary care, and

... present[ ] a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the [defendant] must have been aware of it." *Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 962 (5th Cir.1981); *see also In re Baesa Sec. Litig.,* 969 F.Supp. 238, 241 (S.D.N.Y.1997) (noting that the PSLRA does not affect the scienter standard regarding knowledge and recklessness).

■ Fed.R.Civ.P. 9(b) allows for intent to be averred generally. However, in securities cases, this requires more than a mere allegation that the defendant had a fraudulent intent. *See Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994). "The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that makes it reasonable to believe that [the] defendant knew that a statement was materially false or misleading." *Greenstone v. Cambex Corp.,* 975 F.2d 22, 25 (1st Cir.1992).

■ Historically, an inference of fraudulent intent could be made under the Second Circuit's "strong inference" standard. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994); *Tuchman,* 14 F.3d at 1068. This standard could be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields,* 25 F.3d at 1128. However, in 1995, Congress passed the Private Securities Litigation Reform Act which outlined the required pleading standard in private actions: "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Failure to plead particular facts requires that the action be dismissed. *See id.* § 78u–4(b)(3)(A).

One reason for enactment of the PSLRA was to curtail individual shareholders from bringing strike suits against companies. *See* H.R. CONF. REP. No. 104–369, at 41 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 740 (stating that the Rule 9(b) requirement that fraud be pled with particularity has failed to prevent abuse of the securities laws by private litigants). The PSLRA's purpose was to "protect investors, issuers, and all who are associated with our capital markets from abusive securities litigation," and to "implement[] needed procedural protections to discourage frivolous litigation." *Id.* at 32, 1995 U.S.C.C.A.N. at 731.

Paracelsus contends that the PSLRA adopted a heightened pleading requirement whereby pleading that it had the "motive and opportunity" to commit fraud is no longer sufficient to give rise to an inference of scienter. Plaintiffs maintain that the PSLRA did not change the pleading standard enunciated by the Second Circuit.

No appellate court has construed this section of the PSLRA, and the district courts have been divided in their interpretations. Those cases concluding that Congress eliminated the motive and opportunity test as the sole method for pleading scienter include: *Malin v. Ivax Corp.,* 17 F.Supp.2d 1345, at 1355–56 (S.D.Fla.1998); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 999 F.Supp. 725, 728 (S.D.N.Y. 1998); *In re Stratosphere Corp. Sec. Litig.,* 1 F.Supp.2d 1096, 1107 (D.Nev.1998); *Queen Uno Ltd. Partnership v. Coeur D'Alene Mines Corp.,* 2 F.Supp.2d 1345, 1359 (D.Colo.1998); *Novak v. Kasaks,* 997 F.Supp. 425, 430 (S.D.N.Y.1998); *In re Glenayre Techs., Inc. Sec. Litig.,* 982 F.Supp. 294, 297–98 (S.D.N.Y.1997); *Havenick v. Network Express, Inc.,* 981 F.Supp. 480, 527–28 (E.D.Mich.1997); *Powers v. Eichen,* 977 F.Supp. 1031, 1039 (S.D.Cal.1997); *In re Baesa Sec. Litig.,* 969 F.Supp. 238, 242 (S.D.N.Y.1997); *In re Silicon Graphics, Inc. Sec. Litig.,* No. C 96–0393, 1996 WL 664639, at 6 (N.D.Cal.

Sept. 25, 1996); *Friedberg v. Discreet Logic Inc.,* 959 F.Supp. 42, 48 (D.Mass.1997); *Press v. Quick & Reilly,* No. 96–CV–4278, 1997 WL 458666, at *2 (S.D.N.Y. Aug. 11, 1997); *Rehm v. Eagle Fin. Corp.,* 954 F.Supp. 1246, 1253 (N.D.Ill.1997); *Norwood Venture Corp. v. Converse, Inc.,* 959 F.Supp. 205, 208 (S.D.N.Y.1997).

On the other hand, cases concluding that Congress did not eliminate the motive and opportunity test include: *Zuckerman v. Foxmeyer Health Corp.,* 4 F.Supp.2d 618, 623 (N.D.Tex.1998); *City of Painesville v. First Montauk Fin. Corp.,* 178 F.R.D. 180, 187 (N.D.Ohio 1998); *Gilford Partners v. Sensormatic Elec. Corp.,* No. 96–C–4072, 1997 WL 757495, at *18 (N.D.Ill. Nov. 24, 1997); *In re Health Management, Inc. Sec. Litig.,* 970 F.Supp. 192, 201 (E.D.N.Y. 1997); *Page v. Derrickson,* No. 96–842–CIV–T–17C, 1997 WL 148558, at *10 (M.D.Fla. Mar. 25, 1997); *Fugman v. Aprogenex, Inc.,* 961 F.Supp. 1190, 1195 (N.D.Ill.1997); *Shahzad v. H.J. Meyers & Co.,* No. 95–CIV–6196, 1997 WL 47817, at *7 n.6 (S.D.N.Y. Feb. 6, 1997); *Fischler v. AmSouth Bancorporation,* No. 96–1567–CIV–T–17A, 1996 WL 686565, at *23 (M.D.Fla. Nov. 14, 1996); *Zeid v. Kimberley,* 930 F.Supp. 431, 438 (N.D.Cal.1996); *STI Classic Fund v. Bollinger Indus., Inc.,* [1997 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 90,539, at 97,600, 1996 WL 866699 (N.D.Tex. Nov. 12, 1996); *Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F.Supp. 1297, 1312 (C.D.Cal. 1996).

■ Nearly all of Plaintiffs' allegations in Count IV fall within the ambit of pleading motive and opportunity. Plaintiffs therefore understandably contend that the Court should adopt the "motive and opportunity" test which was at one time recognized by the Second Circuit as a method for alleging an inference of scienter. *See Shields v. Citytrust Bancorp. Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). That standard was applied, however, before the enactment of the PSLRA in 1995. The central tenet of statutory interpretation is to look

first at the language of the statute. *See Landreth Timber Co. v. Landreth,* 471 U.S. 681, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). Nowhere in the text of the PSLRA are the words "motive and opportunity" used. In fact, in the Conference Committee, Congress specifically deleted that phrase from the Senate's version of the legislation before the bill's final passage. Congress did, however, seem to accept the second part of the Second Circuit's standard by requiring plaintiffs, with respect to each claim of a fraudulent act or omission, to plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The plain language of the statute mandates a conclusion that pleading motive and opportunity–a less burdensome standard–is not sufficient to raise a strong inference of scienter. *Accord Baesa,* 969 F.Supp. at 242.

This plain reading of the statute is reinforced by its legislative history.[1] The Senate Report states:

> The Committee does not adopt a new and untested pleading standard that would generate additional litigation. Instead, the Committee chose a uniform standard *modeled upon* the pleading standard of the Second Circuit.... The Committee *does not intend to codify the Second Circuit's case law* interpreting this pleading standard, although courts may find this body of law instructive.

SEN. REP. No. 104–98, at 15 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 694 (footnotes omitted) (emphasis added). The Conference Committee Report, and its footnote 23, specifically declared the Committee's intent and the corresponding action taken not to adopt the Second Circuit's standard in its entirety:

> The Conference Committee language is based *in part* on the pleading standard of the Second Circuit.... Because the Conference Committee intends to strengthen *existing* pleading requirements, it *does not intend to codify the Second Circuit's case law* interpreting this pleading standard.[23]
>
> [23]For this reason, the Conference Report chose not to include in the pleading standard certain language relating to motive, opportunity, or recklessness.

H.R. CONF. REP. at 41, 1995 U.S.C.C.A.N. at 740 (emphasis added).

The language of these Senate and Conference Committee Reports reflects a studied and deliberate decision to use the Second Circuit standard only as a "model" by adopting "part" of it, while specifically rejecting inclusion of the other part–the motive and opportunity test. Furthermore, the Conference Report specifically stated that the Committee "intend[ed] to strengthen .existing pleading requirements" and hence, did *not* intend to codify the Second Circuit's case law interpreting the pleading standard.

The Conference Committee Report rejecting inclusion of the Second Circuit's motive and opportunity test was not superfluous to the Committee's work. That language had actually been adopted on the floor of the Senate in its version of the bill. Senator Spector offered an amendment during floor debate to codify the "motive and opportunity" standard. *See* S. Amend. 1483, 104th Cong., 141 Cing. Rec. S9199–03, S9201 (1995). The amendment was adopted and was included in the version of the PSLRA initially passed by the Senate. *See id.* at S9222. It was this exact language relating to the motive and opportunity test, therefore, which the Conference Committee and the Congress later rejected when the final bill was passed. "Few

1. The Senate and House Conference Reports are the most reliable and authoritative secondary sources of congressional intent. *See Garcia v. United States,* 469 U.S. 70, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984); *RTC v.*

*Gallagher,* 10 F.3d 416, 421 (7th Cir.1993) (stating that the Conference Report "is the most persuasive evidence of congressional intent besides the statute itself").

principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1219, 94 L.Ed.2d 434 (1987) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 100 S.Ct. 1723, 1741–42, 64 L.Ed.2d 354 (1980) (Stewart J., dissenting)).

Finally, because of Congress's decision to delete the Second Circuit's motive and opportunity test in favor of a heightened pleading standard, President Clinton vetoed the legislation. President Clinton found that it was "crystal clear" what Congress was doing in this legislation and objected to it in his veto message to Congress:

> I believe that the pleading requirements of the Conference Report with regard to a defendant's state of mind impose an unacceptable procedural hurdle to meritorious claims being heard in Federal courts. I am prepared to support the high pleading standard of the U.S. Court of Appeals for the Second Circuit–the highest pleading standard of any Federal circuit court. But the conferees make crystal clear in the Statement of Managers their intent to raise the standard even beyond that level. I am not prepared to accept that.

> The conferees deleted an amendment offered by Senator Spector and adopted by the Senate that specifically incorpo-

rated Second Circuit case law with respect to pleading a claim of fraud. Then they specifically indicated that they were not adopting Second Circuit case law but instead intended to "strengthen" the existing pleading requirements of the Second Circuit. All this shows that the conferees meant to erect a higher barrier to bringing suit than any now existing–one so high that even the most aggrieved investors with the most painful losses may get tossed out of court before they have a chance to prove their case.

H. Doc. No. 104–150, 104th Cong., 141 Cong. Rec. H15214–06, H15215 (1995). Congress overrode the President's veto and the PSLRA became law. See 104th Cong., 141 Cong. Rec. D1506–02, D1507, (1995); 104th Cong., 141 Cong. Rec. D1495–01, D1495 (1995). The statutory language and its legislative history lead to only one conclusion: the PSLRA imposes a heightened pleading standard and eliminates the ability to plead scienter solely by alleging evidence of a defendant's motive and opportunity.[2]

### C. *Plaintiffs' Second Amended Complaint*

 In ¶ 95 of the Complaint, Plaintiffs plead generally, and without the specific averments required by the PSLRA, as follows:

> Paracelsus acted with scienter throughout the Class Period, in that it either had actual knowledge of the misrepre-

---

**2.** The Court notes the argument made by Plaintiffs that the Fifth Circuit in *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997), stated that the PSLRA did not change the strong inference pleading standard adopted by the Second Circuit. See Pls.' Resp. Mot. Dismiss at 10. In *Williams,* however, the Fifth Circuit was not discussing the standard for pleading scienter under § 10(b); instead, the court cited a Second Circuit case that discussed the particularity with which the elements of fraud had to be pled under Rule 9(b) (*i.e.,* the "who, what, when, and where"). *See Williams,* 112 F.3d at 177–78 (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170 (2d Cir.1993) (setting forth the specificity with which the elements of fraud must be pled)). The Fifth Circuit in *Williams* did not discuss the new requirement for pleading scienter under § 10(b), nor did it rely upon the Second Circuit's contrary decision in *Shields,* which had held that pleading motive and opportunity was sufficient from which to infer scienter. *Maldonado v. Dominguez,* 137 F.3d 1, 9 n. 5 (1st Cir.1998), which made a similar statement to the one in *Williams,* is distinguishable on the same basis as *Williams.*

sentations and omissions of material facts set forth in paragraph 77, above, or acted with reckless disregard for the truth in that it failed to ascertain and to disclose the true facts, even though such facts were available to it.

Paragraph 77 sets out eight specific statements contained in Paracelsus's prospectuses that Plaintiffs allege were false and misleading, some of which were drawn from Paracelsus's financial statements. *See* Complaint ¶ 77. Having made the conclusory allegation in ¶ 95, however, Plaintiffs fail, "with respect to each act or omission ..., [to] state with particularity, facts giving rise to a strong inference that the defendant acted with the required [scienter]." Apart from numerous allegations that Paracelsus had the motive and opportunity to act with scienter, Plaintiffs have pled no facts to show that Paracelsus knew that its false statements were false at the time they were made, nor do Plaintiffs plead facts showing that Paracelsus acted with reckless disregard for the truth of each false statement.

▮ Plaintiffs assert that they have shown a strong inference of knowing or reckless conduct by pleading that Paracelsus violated generally accepted accounting principles (GAAP). *See id.* ¶ 77. Specifically, Plaintiffs pled:

> 71. The disclosure by Paracelsus in the Form 10–K that it had restated each of the historical financial statements included in the Public Offering Prospectuses, due to the discovery of accounting errors and irregularities, constituted an admission that each of these statements, as included in the prospectuses, were materially [sic] and misleading when issued....

*Id.* ¶ 71. The Complaint then lists the specific GAAP provisions which were violated. *See id.* ¶ 78. The Fifth Circuit has held, however, that "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *Fine v. American Solar King Corp.*, 919 F.2d 290, 297 (5th

Cir.1990); *see also Malin v. Ivax Corp.*, 17 F.Supp.2d at 1360–61 (S.D.Fla.1998) (holding that a violation of GAAP, by itself, does not constitute recklessness). Instead, Plaintiffs must plead facts from which it may be inferred either that Paracelsus knew that the statements were false when published or was severely reckless in publishing the information. *See Fine,* 919 F.2d at 297.

▮ Plaintiffs have also pled that Paracelsus knew the statements were false because the company admitted in its Form 10–K filing that its restated financial statements were required because of "accounting errors and irregularities." Complaint ¶ 71. According to the American Institute of Certified Public Accountant's Codification of Statements on Accounting Standards § 316, "accounting irregularities" are "intentional misstatements or omissions of amounts or disclosures in financial statements. Irregularities include fraudulent financial reporting undertaken to render statements misleading, sometimes called management fraud." *Id.* Factual allegations that a company has *admitted* to intentional misstatements or omissions, or to fraudulent financial reporting, are sufficient to meet the heightened pleading standard of the PSLRA *if* those admissions were made with regard to each of the false statements that the complaint alleges were made with scienter. A careful reading of Plaintiffs' Complaint, however, reflects that this nexus has not specifically been pled. If given another pleading opportunity, Plaintiffs–separately, with respect to one or more of the eight false statements alleged in ¶ 77–may be able to "state with particularity facts" that Paracelsus has admitted intentionally falsifying the statement(s), or may be able to state other facts that give rise to a strong inference that Defendant acted with scienter specifically in making one or more of the false statements. Plaintiffs will therefore be given an opportunity to file a more definite statement, if they can do so in

good faith under the rigorous requirements of the PSLRA.

■ Plaintiffs also assert that they have established a strong inference of reckless conduct by pleading that Paracelsus knowingly made misrepresentations in connection with the sale of securities and less than two months later (after consummation of the merger) revealed that the financial statements needed to be restated. See Complaint ¶¶ 95, 61, 65. This is not sufficient to meet the heightened pleading standard of the PSLRA or even of Fed. R.Civ.P. 9(b). "[T]he short time frame between an allegedly fraudulent statement or omission and a later disclosure of inconsistent information does not, standing alone, provide a sufficient factual grounding to satisfy Rule 9(b)." *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1225 (1st Cir. 1996) (stating that such information may provide some circumstantial support to be taken into account). Plaintiffs have cited no case to support the contention that a correction made within two months after the false statement was made is close enough in time to give rise to a strong inference of scienter. *See Gross v. Summa Four, Inc.,* 93 F.3d 987, 995 (1st Cir. 1996) (finding that no inference of scienter can be made when the proximity is five weeks); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co.,* 75 F.3d 801, 812 (2d Cir.1996) (finding that a three week time period was not close enough in proximity). *Cf. Powers v. Eichen,* 977 F.Supp. 1031, 1039 (S.D.Cal.1997) (finding a three week time period close enough in proximity); *Shaw,* 82 F.3d at 1225 (finding that an eleven day time period could be taken into account).

For the most part, Plaintiffs have pled facts suggesting that Paracelsus had a motive and opportunity to commit fraud. Because Congress has rendered allegations of this nature to be inadequate to give rise to a strong inference of scienter, they need not be discussed.

Plaintiffs' Second Amended Complaint fails, with regard to each act or omission alleged to be fraudulent, to state with particularity facts giving rise to a strong inference that Paracelsus acted with scienter in committing that act or omission.

### IV. *Order*

It is therefore

ORDERED that Defendant Paracelsus's Motion to Dismiss Count IV of Plaintiffs' Second Amended Consolidated Class Action Complaint is GRANTED, providing, however, that Plaintiffs are granted leave to amend Count IV within fourteen (14) days after the entry of this Order by the filing of a more definite statement, if they can do so in good faith and consistent with the PSLRA. Any amendment of Count IV must state with particularity facts that give rise to a strong inference that Paracelsus acted with scienter in making any particular statement that is alleged to have been made in violation of § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder.

The Clerk shall notify all parties and provide them with a true copy of this Order.